## Wallingford, &c. *vs.* DeBell, &c.

**APPEAL FROM FLEMING CIRCUIT.**

Pet. Eq.

Case 6.

A testator in the body of his will directed his estate to be sold, and two hundred and fifty dollars to be paid to each of four named grand-children, the balance to be divided amongst his living children by name. By a codicil it is provided that the part coming to his son Lewis, (one of his living children,) "it is not to be given up to him, but is to be held and kept by my executors and equally divided between his children, and paid over to them when they severally arrive at lawful age to receive it." Held—that the legacy was a vested legacy in the children of Lewis, and one of them dying in infancy, that its father became entitled to the part which that child would have received absolutely.

The facts of the case are stated in the opinion of the court.

*Cavan,* for appellants—

Contended that it was the will of the testator that Lewis DeBell was not in any event to have any part of his estate, but that his children, living at the time distribution should be made, as a class should take it, and one of his children having died, the survivors are entitled under the will, and not the father of the child as heir. The title to the fund was vested in the executors ; they hold it in trust for the children of Lewis DeBell until they are entitled to receive it. The property was never vested until the children were qualified to receive it. They never did receive it.

*J. M. Harlan,* for appellees—

The interest of Mary Ellen DeBell, the child of Lewis DeBell, was a vested interest, which accrued to her upon the death of her grandfather, under his will, though not to be enjoyed until her arrival of full age ; and being a vested interest, it accrued to her father upon her death, as her heir-at-law. (*Stat. Laws, page* 660.) It may be conjectured that the testator intended to give the share of his estate to which Lewis DeBell would have been entitled under

WALLINGFORD,
&c.
vs.
DEBELL, &c.

the will to his children as a class, but this construction is not admissible without doing violence to its terms.

An affirmance is anticipated.

June 11.

Chief Justice MARSHALL delivered the opinion of the Court—

John DeBell, by his last will, directed all of his estate to be sold on prescribed credits, and the proceeds to be divided in the following manner, viz: Two hundred and fifty dollars to each of four named grand-children, descendants of three of his deceased children, and all the balance, after payment of debts, to be divided equally among his living children, (who are also named,) respect being had to advancements made to each, which are stated. By a codicil, it is provided that whatever may fall to the lot of testator's son Lewis, (one of his four living children named in the will,) "it is not to be given up to him, but is to be held and kept by my executors, and equally divided between his children, and paid over when they severally arrive at lawful age to receive it." This will was admitted to record in 1849; and, in 1854, before a settlement and distribution of the estate were effected, and while the suit was pending, Mary Ellen DeBell, one of the five children of Lewis De-Bell, died, at the age of sixteen years, unmarried, and of course childless and intestate, and leaving her father, Lewis DeBell, and his four other children, surviving. And all other questions in the suit having been settled, except as to the portion which Mary Ellen DeBell would have received if living, the benefit of which was claimed by her father on the one side, and by his surviving children on the other, and the court having decreed it to the father, the propriety of this decision presents the only question now before us.

The distinction between the cases in which the time or event mentioned in a bequest is to be understood as qualifying the gift itself, and those in which it is to be taken as imposing a condition not upon

A testator in the body of his will directed his estate to be sold,

the gift or legacy itself, but as merely referring to the time of payment, is laid down by the elementary writers, and seems to be well established by judicial authority. And the rule growing out of the distinction is, that if the qualification is annexed not to the gift or legacy itself, but merely to the time of payment, although the enjoyment of the legacy is postponed, the right vests immediately, and the legacy being vested is transmissible, if otherwise undisposed of, and in fact passes according to the course of law, to the representatives of the legatee, though he or she die before the time of enjoyment arrives.

The legatory words in the codicil, are found in the direction that what may fall to the lot or share of Lewis, is to be equally divided among his children. The gift is complete by these words, and what follows relates exclusively to the time of payment. The first words make the gift of what may fall to the lot of Lewis, that is, of his share according to the body of the will, to his children complete, as is evident, if the following words be omitted. And as these last words relate expressly to the payment, they do not affect the gift itself, the existence of which, and the right to that which is given, are in themselves independent of the actual enjoyment, and are not made dependent upon the time or event which is to fix the commencement of the actual enjoyment. The effect of the codicil is to place the children of Lewis in the same condition in which the body of the will placed Lewis himself, that is, it gives to them Lewis' part, or a child's part, or one-fourth part of the balance or residue, subject to an account of the advancements made by the testator in his lifetime. And although this legacy is given to the children of Lewis as a class, and vested altogether in such as were living when it became vested, yet when it did vest, each became entitled to a distinct portion of all that was given by the legacy, and upon the subsequent death of either, the will making no further disposition of the portion of the decedent, leaves

WALLINGFORD, &c.
vs.
DeBELL, &c.

and $250 to be paid to each of four named grand-children, the balance to be divided amongst his living children by name. By a codicil it is provided that the part coming to his son Lewis, (one of his living children,) "it is not to be given up to him, but it is to be held and kept by my executors and equally divided between his children, and paid over to them when they severally arrive at lawful age to receive it."— Held—that the legacy was a vested legacy in the children of Lewis, and one of them dying in infancy, that its father became entitled to the part which that child would have received, absolutely.

it to pass according to law to his or her representatives. And as the aliquot portion, which Lewis and each of the testator's children was to have under the original bequest, was ascertained by the will itself to be one-fourth of the residuum after the payment of debts, and the legacies to the four grand-children, and as the portion of each of the children of Lewis was fixed, by the number of his children, as being one-fifth, there is no uncertainty even in determining the precise sum to which each of his children was then entitled, (though payable to some at a future day,) except such as existed in ascertaining the precise sum to which Lewis himself would have been entitled under the original bequest. And as this uncertainty, which could only be solved by an adjustment of the advancements, and a comparison of the means of the estate with the claims upon it having precedence of the residuary legacies, there is as much reason for saying that this uncertainty made the original legacy to Lewis himself contingent, as for saying that it made the legacy to his children contingent. In each case, a certain portion of the residuum, subject to the account of advancements, is given, the ascertainment of the sum payable under the gift did not affect the right to the portion bequeathed, nor prevent its vesting immediately on the death of the testator. It does not, indeed, appear that the sum payable on the several portions as provided for in the will may not have been ascertained, and were not, in fact, ascertained before the death of Mary Ellen DeBell. But the contrary, though not expressly stated in the agreed facts, may be fairly inferred, and especially in favor of the decree which is sought to be reversed. And certainly the vesting of this legacy did not depend upon the actual distribution being made before the death of one of the legatees. Nor could it have been postponed by the delay of the executors in performing the will, nor by a litigation with respect to the rights of the parties. For all that appears, the

estate might and ought to have been settled before the death of Mary Ellen DeBell.

In every view of the case, we are of opinion that the legacy of one-fifth of the portion which should fall to the lot of Lewis DeBell was vested in his daughter Mary Ellen before her death, and passed to her representatives. And that her surviving father, being her only distributee, was, in the contest between him and his surviving children, entitled to the whole. The direction that what may fall to his lot (in testator's estate) should not be given up to him, &c., does not apply to the portion vested in his daughter, but means only that the portion to which he would otherwise have been entitled shall not be given to him, but to his children, after which no disposition is made of it except as to the time when it shall be paid to them respectively.

Wherefore, the decree is affirmed.